**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**WESTERN DIVISION**

FILED
99 SEP 23 PM 3: 39
U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| **TOM BLACKERBY, et al.,** | ] | |
| Plaintiff(s), | ] | |
| vs. | ] | CV-99-N-2347-W |
| **GREENE COUNTY COMMISSION, et al.,** | ] | |
| Defendant(s). | ] | |

ENTERED
SEP 23 1999

**Memorandum of Opinion**
**and**
**Preliminary Injunction**

The court has for consideration the Plaintiff's Motion for Preliminary Injunction filed September 10, 1999. As the issues have been fully briefed and orally argued to the court, the motion is ripe for decision. As announced at the hearing on Friday, September 17, 1999, the motion will be granted.

**I. Introduction.**

During the 1999 session of the Alabama Legislature, HB-71 was introduced ostensibly for the purpose of authorizing the operation of electronic games of chance (video poker) at certain facilities, including dog racing tracks, within the State of Alabama. The defendants here, who are the plaintiffs in the State court action (the "Greene County plaintiffs"), are operators or beneficiaries of revenues from the operation of the Greene Track dog racing facility in Greene County, Alabama, who supported the proposed legislation and expected to benefit financially from the operation of video poker games to

be authorized by it.[1] The plaintiffs here (the "federal plaintiffs") actively opposed the proposal by speaking out against it–engaging in a public media campaign and intensive lobbying efforts with members of the Legislature. The Greene County plaintiffs assert that HB-71 was "narrowly" defeated based upon "false information provided primarily by defendants," the federal plaintiffs. (Amended Complaint ¶ 21).

On August 25, 1999, the Greene County Commission, the Greene County Board of Education, and Greene Track, Inc. (Greene County plaintiffs) filed a lawsuit (CV99-0130) in the Circuit Court of Greene County, Alabama, against the federal plaintiffs and others not parties to this lawsuit, seeking some $300 million in compensatory and punitive damages. In their first amended original complaint filed in the state court lawsuit, the Greene County plaintiffs purport to state claims of Conspiracy, Tortious Interference with Business Relations, False Light Invasion of Privacy against Plaintiff, Tort of Outrage, and Abuse of Legislative Process. In their second amended complaint, filed on September 15, 1999, (two days before the preliminary injunction hearing), they purported to add claims based upon asserted violations of Alabama's criminal solicitation statute (ALA. CODE § 13A-4-3), the Code of Ethics (ALA. CODE, § 36-25-1, *et seq.*), and the Fair Campaign Practices Act (the "FPCA")(ALA. CODE, § 17-22A-1, *et seq.*). Generally, the Greene County plaintiffs allege that the federal plaintiffs have engaged in a state-wide "conspiracy," including both in-state and out-of-state owners of illegal video poker machines and out-of-state owners and operators of lawful gambling casinos in the State of Mississippi, in order to protect and

---

[1] In their amended state court complaint, the Greene County plaintiffs assert that they are: Greene Track, Inc., a licensed operator of a dog racing track in Greene County; the Greene County Commission, the governing body of Greene County, Alabama; and the Greene County Board of Education.

2

maintain such unlawful video poker machines in the State of Alabama and in order to protect lawful Mississippi gambling facilities from the competition that would ensue from lawful video poker machines in Alabama generally and at Greene Track, in particular. All of this, according to the Greene County complaint, while pretending to oppose the expansion of lawful gaming activities in the State of Alabama. (Amended Complaint ¶ 16). In particular, the Greene County plaintiffs claim that the federal plaintiffs provided unlawful and unethical gratuities to Alabama public officials to induce them to defeat HR-71 and to "protect illegal gaming and restrain official acts that would impede illegal gaming in Alabama." (Amended Complaint ¶ 18). They state, "Defendants' [federal plaintiffs] public contentions about restricting the expansion of lawful gambling are little more than a fraudulent cover." (*Id.*)  In addition, they claim the federal plaintiffs "operate through associates, agents, lobbyists, employees, confederates and others to maintain illegal gambling in Greene County and elsewhere in Alabama." (Amended Complaint ¶ 17). As for HB-71, the video poker bill, the Greene County plaintiffs assert that it was defeated in part because of false information provided to Alabama legislators by the federal plaintiffs. (Amended Complaint ¶ 21).  In their second amended complaint, the Greene County plaintiffs seek compensatory and punitive damages numbering $ 22 million for alleged violations of Alabama's Ethics laws and the Fair Campaign Practices Act.

On September 7, 1999, the federal plaintiffs brought the current action under 42 U.S.C. § 1983, seeking *inter alia* declaratory and injunctive relief to prevent the Greene County plaintiffs from pursuing their state court action. The federal plaintiffs allege that the Greene County action was brought for the purpose and has the effect of chilling their

respective First Amendment rights to free speech, to petition their government, and to freely associate in the period leading up to the state-wide referendum on October 12, 1999, in which the voters of this state will consider whether the Alabama Constitution should be amended to permit the establishment of a lottery to be operated by the State of Alabama. The federal plaintiffs first sought a temporary restraining order prohibiting the Greene County plaintiffs from prosecuting the state court lawsuit as well as a preliminary injunction. The motion for a temporary restraining order was denied by another judge of the court, and the matter was then reassigned to this judge. On Friday, September 17, 1999, after proper and sufficient notice, the court conducted a hearing at which the parties were afforded an opportunity to offer oral argument.

## II. Abstention.

For reasons of comity and out of respect for the authority of sister courts at the state level, federal courts generally are exceptionally reluctant to exercise the judicial power of the United States where to do so would have the effect of interfering with or injecting federal power into the legitimate functions of state courts. Nevertheless, there are occasions when state litigation has the clear purpose and effect of infringing fundamental constitutional rights without advancing any vital state interests. In such circumstances, it is both necessary and appropriate to exercise federal judicial power, even when the result is to interfere with ongoing proceedings in a state court. This case presents one such occasion.

### A. Younger Abstention.

Under *Younger v. Harris,* 401 U.S. 37, 53 (1971), and its progeny, federal district courts must abstain when asked to enjoin pending state court proceedings except under limited circumstances. The *Younger* doctrine is grounded upon notions of comity between the state and national governments. It confirms the "strong federal policy against federal court interference with pending state judicial proceedings." *Middlesex County Ethics Comm. v. Garden State Bar Assn.,* 457 U.S. 423, 431 (1982) (describing comity as "a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways"). While *Younger* does not mandate a blind deference to "states' rights," it requires federal courts to refrain from interfering with the "legitimate activities of the states." *Younger,* 401 U.S. at 44.

Although *Younger* addressed abstention in the context of state criminal proceedings, its general principles have been extended to apply to civil proceedings in the state courts. *Pennzoil Co. v. Texaco,* 481 U.S. 1, 14 (1987); *Old Republic Union Insurance Co. v. Tillis Trucking Co., Inc.,* 124 F.3d 1258, 1261-62 (11th Cir. 1997). It is undisputed that the policies underlying *Younger* are fully applicable to noncriminal judicial proceedings when important state interests are at stake. *Garden,* 457 U.S. at 432; *Cate v. Oldham,* 707 F.2d 1176, 1183 (11th Cir. 1983). Where vital state interests are involved, a federal court should abstain unless state law clearly bars the interposition of the federal claims. *Garden,* 457 U.S. at 432. Accordingly, in civil cases where abstention is at issue, courts apply a three-

fold analysis: (1) does the state court action constitute an ongoing state judicial proceeding[2]; (2) do the proceedings implicate important state interests; and (3) is there an adequate opportunity in the state proceedings to raise the constitutional challenges at issue. *Id.*; *Old Republic Union Insurance Company*, 124 F.3d. 1258, 1261 (11th Cir. 1997); *ALFA Financial Corp. v. Key*, 927 F.Supp. 423, 432 (M.D. Ala. 1996); *Williams v. Adkinson*, 792 F. Supp. 755, 766 (M.D. Ala. 1992).

### B. Important State Interests.

Abstention is proper when the State's interest in a state court lawsuit is so important that the exercise of the federal judicial power would disregard the comity between the states and the National Government. *Younger*, 401 U.S. at 43. The Supreme Court and the Eleventh Circuit have had numerous opportunities to demonstrate when a state interest is important enough to justify federal court abstention. As a general principle, state proceedings necessary for the vindication of important state policies or for the functioning of the state judicial system implicate a substantial interest of the state. *Trainor v. Hernandez*, 431 U.S. 434 (1977)(civil enforcement proceeding intended to safeguard the fiscal integrity of state welfare programs); *Garden*, 457 U.S. at 432-3 (state disciplinary proceedings for attorneys); *Judice v. Vail*, 430 U.S. 327 (1977)(state contempt process). Likewise, a vital state interest is present when the federal plaintiffs challenge the constitutionality of a state statute or local ordinance. *See Pennzoil Co.*, 481 U.S. at 14; *Redner v. Citrus County Florida*, 919 F.2d 646, 649 (11th Cir. 1990); *Old Republic*, 124 F.3d at 1263-4.

---

[2] It is undisputed that the state court lawsuit is an "ongoing state judicial proceeding."

The issues here are not unlike those the Eleventh Circuit addressed in *Cate v. Oldham*. In *Cate*, a state court defendant in a pending civil lawsuit (Cate) brought a federal action under § 1983 asking the federal court to enjoin the state court lawsuit. The underlying state claim was a common law action for malicious prosecution brought by a state attorney (Oldham) against a lawyer (Cate) who had unsuccessfully sued state officials in an action in which he had charged the state officials with improperly failing to protect his client's decedent from a violent husband. The Eleventh Circuit found that the malicious prosecution lawsuit likely did not implicate vital state interests and reversed the district court's refusal to enjoin the state action. *Cate*, 707 F.2d at 1183.

The Greene County plaintiffs argue that their state court suit implicates vital state interests because "the state would clearly have an interest in ensuring that its statutes and policies in them are adhered to. . . ." (Greene County Plaintiffs' Motion to Abstain p. 2). This argument fails for the plain reason that none of the Greene County plaintiffs is either the State of Alabama or an official or governmental body charged by Alabama law with enforcement of its criminal laws. The Constitution and laws of the State of Alabama provide the traditional means by which the criminal laws may be enforced. If the Greene County action were a proceeding to enforce the criminal laws by a party authorized to do so, it would present a closer question and perhaps require a different result.[3]

Here, however, the Greene County plaintiffs are substantially similar to private parties who may have hoped and expected to benefit from the legalization of video poker games in the State. In order to prevail, they would have to allege and prove that they were

---

[3] See, for example, Titles 13 and 13A of the *Code of Alabama*, 1975.

7

proximately injured by the alleged wrongful conduct of the federal plaintiffs. The court entertains grave doubts that, how, under the allegations of the Greene County complaint, as amended, the Greene County plaintiffs would ever be able to prove a direct injury resulting from the conduct of the federal plaintiffs. As Justice Scalia has written, "... I think ... it has always been the practice of common-law courts (and probably of all courts, under all legal systems) to require as a condition of recovery, unless the legislature specifically prescribes otherwise, that the injury have been proximately caused by the offending conduct. Life is too short to pursue every human act to its most remote consequences; 'for want of a nail, a kingdom was lost' is a commentary on fate, not the statement of a major cause of action against a blacksmith." *Holmes v. Securities Investor Protection Corp.* 503 U.S. 258, 287 (1992). Because their claims of proximate injury are so obviously tenuous, the Greene County plaintiffs tread murky waters indeed by seeking to argue that *they* protect any vital state interest by bringing the Greene County suit.

Just as did the plaintiff in *Cate,* the federal plaintiffs here allege that they have been irreparably injured, and continue to be so injured so long as they remain subject to the Greene County suit, and chilled in the exercise of their First Amendment rights as a direct result of the state court lawsuit brought against them by the Greene County plaintiffs. As noted above, the Greene County plaintiffs have not satisfied their burden to demonstrate that they protect a vital state interest and because that, in combination with the infringement of the federal plaintiffs' First Amendment rights, is so, the federal plaintiffs are not required to demonstrate that the state cannot provide them with an adequate opportunity to raise

their federal constitutional challenges and claims. *See Ankenbrandt v. Richards*, 504 U.S. 689 (1992). Accordingly, abstention under the Younger doctrine is inappropriate.

### C. Quasi-Criminal Proceedings

In addition, the Greene County plaintiffs assert that abstention is warranted because the state court lawsuit is akin to a criminal proceeding. *Huffman v. Pursue, Ltd.*, 420 U.S. 592 (1975); *Cate*, 707 F.2d at 1183. In reality, this is nothing more than *Younger* abstention in a different form, but the court will address this different aspect of it. In *Huffman*, local officials brought a civil proceeding in state court to enforce an Ohio public nuisance statute against a local adult movie theater. However, the Court described the matter as "more akin to a criminal prosecution than are most civil cases." *Huffman*, 420 U.S. at 604. In determining that abstention was proper, the Court stated that the nuisance action was related to, and assisted in, the enforcement of the criminal statutes prohibiting dissemination of obscene materials. *Id.* In addition, the Court noted that by declaring the nuisance statute unconstitutional and issuing an injunction, the district court "disrupted (Ohio's) efforts to protect the very interests which underlie its criminal laws and to obtain compliance with precisely the standards which are embodied in its criminal laws." *Id.* at 605.

Here, the Greene County plaintiffs point to the alleged statutory violations of criminal solicitation (ALA. CODE §13A-4-1, *et seq.*); the Alabama Code of Ethics (ALA. CODE § 36-25-7, *et seq.*); and the Fair Campaign Practices Act (ALA. CODE § 17-22A-3, *et seq.*), in an attempt to bring their action under the *Huffman* exception. However, the statutes and state interests at issue in this matter are significantly different from the statute at issue in

9

*Huffman*, in terms of both substance and consequence. Foremost is the fact that the Ohio statute clearly articulated a specific civil procedure and remedy for nuisance violations and authorized the Ohio plaintiffs to bring the action they did. *See* OHIO REV. CODE § 3767.03. In addition, the criminal nature of the Ohio nuisance statute is evidenced by the fact that it explicitly provides that public officers, such as district attorneys, and private citizens have co-existing authority to enforce the statute in the name of the state. *See id.* In contrast, the Alabama statutes at issue do not provide comparable private enforcement mechanisms nearly so explicit as the one present in *Huffman*, nor do they provide for enforcement by any of the Greene County plaintiffs. Finally, in *Huffman*, the State of Ohio had a substantial interest in the case because the constitutionality of the state civil nuisance statute was at issue. Here, none of the federal plaintiffs have alleged that any of the Alabama statutes at issue are unconstitutional. Unlike the district court's injunction in *Huffman*, enjoining the pending state court lawsuit in this matter will in no way disrupt Alabama's efforts to protect the very interests which underlie its criminal laws and regulatory acts. The court is convinced that the amendment of the complaint to add the Alabama statutory violations represents nothing less than an effort to artfully plead some sort of creative quasi-criminal claim not heretofore recognized under Alabama law.

Moreover, even if the state court lawsuit should be found to be prosecutorial in nature and a state interest affected, abstention is improper if the state claim was brought in bad faith or to merely harass the federal plaintiffs. *Younger*, 401 U.S. at 53. The court is satisfied there is a high probability that both factors appertain here. As for the criminal solicitation claim, the court had found no Alabama case where a civil action was sustained

10

under the applicable state statute. Moreover, the Greene County plaintiffs have not even alleged that they have complied with the procedural mechanisms set out in the Alabama ethics statutes. (*See* ALA. CODE §§ 36-25-24, 36-25-27). Also, they have not shown any authority providing for a civil action by either private parties or local government agencies under the ethics statutes. Finally, as for the Fair Campaign Practices Act, the Greene County plaintiffs seek to proceed under a statute that, on the face of it, provides no specific civil remedies for persons similarly situated to themselves. In particular, the FCPA violations which are explicitly mentioned in the statute are all criminal in nature. *See* ALA. CODE §17-22A-22. Accordingly, there is no indication that civil damages can be awarded for a violation of the FCPA. In light of the foregoing, the close proximity of the October lottery vote, and the overall dubious tenor of the complaint, the Greene County lawsuit fairly reeks of bad faith and harassing intentions on the part of the Greene County plaintiffs.[4]

### III. Pullman Doctrine

Just as in *Cate*, the court is presented with facts presenting an important federal constitutional issue, and with unsettled questions of state law, which, when answered, may make final resolution of the constitutional question unnecessary. *See Railroad Commission of Texas v. Pullman*, 312 U.S. 496 (1941). Under *Pullman*, abstention is proper in order to avoid an unnecessary decision of federal constitutional questions. *Id.* at 500. However, the

---

[4] The court takes judicial notice of that which is apparent to every reasonably aware citizen of the State of Alabama. The proposed lottery is popularly referred to by its proponents as the "education lottery" with education interests in the State set to benefit by its passage. Of course, one of the Greene County plaintiffs is the Greene County Board of Education who, it would seem, likely has an interest in passage of the lottery amendment.

Pullman abstention doctrine is to be used only in special circumstances. *Cate*, 707 F.2d at 1184. In *Cate*, the court declined to invoke the Pullman abstention doctrine even though a novel question of state law was presented. The court stated that since it was a First Amendment case alleging immediate and ongoing irreparable injury and considering the great costs imposed by abstaining in this type case, it could not abstain. Just as in *Cate*, the matter currently pending before the court presents First Amendment issues of immediate, ongoing, and irreparable injury. Moreover, because a statewide lottery vote is less than one month away, great costs would be imposed on the public interest in an unfettered and free-wheeling public debate on the lottery issue should the court abstain. Accordingly, the court will follow the Eleventh Circuit in *Cate*, and refuse to abstain under the Pullman doctrine.

Though the court cannot abstain under *Pullman*, it does recognize the importance of avoiding unnecessary decisions explicating federal constitutional questions and of guaranteeing that state law is properly interpreted correctly and by the state institutions properly established for that purpose. *See id.* at 1184-5. Therefore, pursuant to the provisions of Rule 18, Alabama Rules of Appellate Procedure, the Court will certify unsettled questions of Alabama law to the Alabama Supreme Court. As the court has noted above, it has grave doubt concerning whether any purported claim as set out in the Greene County plaintiffs' complaint, as amended, would survive a motion to dismiss under Rule 12(b)(6), Alabama Rules of Civil Procedure. The proper body to answer the questions raised by the federal plaintiffs, and now by this court, is the Alabama Supreme Court. Should the Alabama court find that no viable claim is stated, it will not be necessary for this

12

court to determine whether the preliminary injunction to be entered in this action should be made permanent. In other words, the question presented by the federal plaintiffs in the present complaint could be avoided altogether.

Rather than attempting to frame specific questions to be certified, the court feels it more proper to state those questions more generally, as it has already done, and to allow the parties to frame the precise questions to be answered by the Supreme Court under the direction of that court.

### IV.  Preliminary Injunctive Relief.

To be entitled to injunctive relief on a preliminary basis, the moving party must establish (1) there is a substantial likelihood that he will ultimately prevail on the merits; (2) he will suffer irreparable injury unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) the public interest will not be harmed if the injunction should issue. *Cate*, 707 F.2d at 1185 (11th Cir. 1983).

### A. Substantial Likelihood of Prevailing on Merits.

For a First Amendment claim, the relevant test is whether "any burden of First Amendment freedoms, either in the form of a prior restraint or a sanction imposed to prohibit or to punish exercise of First Amendment rights, is justified by sufficiently compelling state interests." *Id.* at 1186. Here, the First Amendment freedoms being infringed upon all relate to the right to lead and participate in an organized campaign in an effort to defeat proposed legislation. It is clearly settled that the First Amendment affords every person the opportunity to speak one's mind on all public interest and the

13

corresponding right to engage in "vigorous advocacy." *Bridges v. California*, 314 U.S. 252, 270 (1941). As for political issues in particular, in *Buckley v. Valeo*, the Court stated, "advocacy of the election or defeat of candidates for federal office is no less entitled to protection under the First Amendment than the discussion of political policy generally or *advocacy of the passage or defeat of legislation*." 424 U.S. 1, 48 (1976)(*emphasis added*). Finally, in *National Association for the Advancement of Colored People v. Button*, the Court reinforced the sound principle that "our form of government is built on the premise that every citizen shall have the right to engage in political expression and association. The right was enshrined in the First Amendment of the Bill of Rights." 371 U.S. 415, 431 (1963). Because the political activities of the federal plaintiffs are clearly protected by the First Amendment, the court finds there is a substantial likelihood they will prevail on the merits of the case.

**B. Irreparable Injury.**

The loss of First Amendment freedoms, even for a minimal period of time, results in irreparable injury. *See Elrod v. Burns*, 427 U.S. 347, 373 (1976). In *Cate*, the court stated, "where state action in the context of state civil proceedings constitutes direct, as opposed to incidental, retaliation for exercise of First Amendment rights, sufferance of such retaliation unquestionably constitutes irreparable injury." *Cate*, 707 F.2d at 1189. There is substantial reason to believe this lawsuit was brought in retaliation for the federal plaintiffs asserting their First Amendment right to oppose the proposed video poker legislation.[5]

---

[5] As noted by the court at the hearing, the complaint, as amended, constitutes a virtual admission that the Greene County plaintiffs seek to punish the federal plaintiffs for having exercised their rights to oppose HR-71.

14

Accordingly, the federal plaintiffs have and continue to suffer irreparable injury sufficient to meet the second prong of the preliminary injunction standard.

### C. Balance of Hardship.

The threatened injury to the federal plaintiffs clearly outweighs whatever damage the preliminary injunction may cause the Greene County plaintiffs. The state court action is at a very early stage; there has been no formal discovery; and there is no suggestion that a trial may be expected in the foreseeable future. In contrast, so long as the state court lawsuit continues, the federal plaintiffs will suffer irreparable injury because they will be chilled in the exercise of First Amendment rights to speak on political issues of interest to them. Whenever a person suffers an irreparable injury associated with First Amendment freedoms, the presumption of hardship will almost always favor the aggrieved party. The fact that the Greene County lawsuit may be delayed does not outweigh the harm to the federal plaintiffs.

### D. The Public Interest.

The public interest analysis clearly weighs in favor of the federal plaintiffs. The Sixth Circuit has said that it is always in the best interest of the public to prevent violations of First Amendment freedoms. *See Connection Distribution v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998). This court agrees. The public is entitled to hear all viewpoints concerning video poker, the proposed lottery, and all other political issues, and is entitled to speak out in support of or in opposition to any and all legislation. If the court were to refuse to issue the preliminary injunction, members of the public likely would be severely disadvantaged by not being informed on all viewpoints, and would also be deterred from speaking out

against controversial issues due to the threat of lawsuits such as that brought by the Greene County plaintiffs. In contrast, the only harm suffered by the public by granting the injunction is a delay in an extremely questionable lawsuit.

A free society, where free, open, and vigorous debate on issues of public concern has attained a status approaching religion, simply cannot tolerate the threat that persons who exercise their right to speak will be punished by the imposition of civil judgments in the millions of dollars. Clearly, the public interest favors entry of the preliminary injunction.

**V. Preliminary Injunction.**

Accordingly, pending further order of the court, it is hereby **Ordered, Adjudged, & Decreed:**

The Greene County Commission, the Greene County Board of Education, and Greene Track, Inc., their officers, agents, servants, employees, attorneys, and anyone acting in concert with any of them, and anyone who shall receive notice of this injunction be and they hereby are **PRELIMINARY ENJOINED** from pursuing or advancing in any manner that certain civil action now pending in the Circuit Court of Greene County, Alabama, which is styled as *Greene County Commission, et al., v. Johnny Wyatt, et al.*, CV-99-0130. This injunction includes, but is not limited to, filing motions, conducting discovery, and engaging in any other conduct which is intended or has the effect of advancing the cause of the Greene County plaintiffs in CV-99-0130. The Greene County plaintiffs are **ORDERED** to provide a copy of this to the judge of the Circuit Court of Greene County, Alabama, to whom the action there is assigned. Though the court has ordered that the state court judge receive a copy of this preliminary injunction, it must be clearly understood that the

16

injunction is not intended to and does not have the effect of directly limiting any action of that court. Instead, it is directed entirely toward the conduct of the Greene County plaintiffs.

Done, this 23rd of September, 1999.

_____
EDWIN L. NELSON
UNITED STATES DISTRICT JUDGE

17